UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY L. SMITH,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent. | Case No. 23-cv-00016 BLF (PR)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS; DENYING CERTIFICATE OF APPEALABILITY** |

On January 3, 2023, Petitioner, a former federal prisoner, filed in *pro se* a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the loss of 14 days of "good conduct time" based a due process violation. Dkt. No. 1. Finding the petition stated a cognizable due process claim, the Court ordered Respondent to show cause why the writ should not be granted. Dkt. No. 12. Respondent filed an answer in which they move to dismiss the petition on various grounds. Petitioner did not file a response although given an opportunity to do so.

## BACKGROUND

Petitioner is a former BOP inmate who was convicted on October 20, 2003, in Western District of Missouri (Case No. 02-CR-05019-BCW) for enticing a minor to

engage in sexual conduct to produce pornography. Painter Decl.[1] at ¶ 3, Dkt. No. 14-1. He received a 235-month sentence with a five-year term of supervised release. *Id.*, Ex. 1 (Dkt. No. 14-1 at 6-14. On December 13, 2019, Petitioner was released from BOP custody and began serving his term of supervised release. *Id*, Ex. 2 (Dkt. No. 14-1 at 15-17).

On April 21, 2021, Petitioner's sentencing judge found that Petitioner had committed five violations of the conditions of his supervised release, revoked said term of supervised release, and imposed a 36-month term of imprisonment with no further term of supervised release to follow. *Id.* at ¶ 4, Ex. 3 (Dkt. No. 14-1 at 18-22). Petitioner was serving his supervised release sentence at FCI Butner, North Carolina, when he was approved for placement in community confinement on August 3, 2022. *Id.* at ¶ 5, Ex. 4 (Dkt. No. 14-1 at 23-25). On September 8, 2022, Petitioner was transferred from FCI Butner to a Residential Reentry Center ("RRC") in San Francisco, California, which is overseen by the Sacramento Residential Reentry Management ("RRM") Office. *Id.*, Ex. 5 (Dkt. No. 14-1 at 26-27).

On November 2, 2022, RRC staff wrote up Petitioner for a Code 309 violation, which was based on Petitioner violating a condition of the community program by registering for an unauthorized program and producing sexually explicit matter.[2] *Id.* at ¶ 8, Ex. 9 (Dkt. No. 14-1 at 34-49); Dkt. No. 1 at 2.

On November 4, 2022, an inmate disciplinary hearing was held. *Id.* at ¶ 9. During the hearing, Petitioner argued that he received permission to obtain training from

---

[1] Respondent submits the declaration of Daniel Painter, the Contract Oversight Specialist for the Residential Reentry Office in Sacramento, California, which is part of the BOP. Dkt. No. 14-1 at 1. The Office where Mr. Painter works is commonly referred to as the Residential Reentry Management's Office ("RRM's Office"). Painter Decl. ¶ 1. As part of his job, Mr. Painter has routine access to BOP records, including BOP's main database on inmates and other records relating to an inmate's sentencing and custody. *Id.* at ¶ 2.

[2] Specifically, RRC staff alleged that Petitioner had circumvented protocols in a job training program called Goodwill, which enabled him to access the internet where he created "teenapedia," a website featuring underaged girls dressed in suggestive clothing that sold subscription to customers seeking to view underaged girls. Painter Decl. at ¶ 8, Ex. 9 (Dkt. No. 14-1 at 34-49).

2

Goodwill, that he thought he could access the internet when outside the RRC, and that the websites with underaged girls were developed over 20 years ago, and not by him. *Id.*, Ex. 9 (Dkt. No. 14-1 at 37 (Section 17)).

The Center Discipline Committee ("CDC"), which is comprised of RRC staff, found persuasive Goodwill's representation that Petitioner had bypassed its protocols to access the internet in order to create the inappropriate website, and considered other evidence, which included an email, Petitioner's signed agreement, and the actual "teenapedia" webpage. *Id.* (Section 19), Ex. 9 (Dkt. No. 14-1 at 43, 47-49). The CDC Then referred the matter to the BOP Disciplinary Hearing Officer ("DHO") to certify the hearing and to impose disciplinary sanctions. *Id.*

Pursuant to BOP policy at Program Statement 7300.09, Community Corrections Manual, RRCs are contractually obligated to follow BOP disciplinary policies. *Id.* at ¶ 10, Ex. 10 (Dkt. No. 14-1 at 50-55). One key component is that a BOP DHO must certify a CDC's compliance with BOP disciplinary process within three working days of receipt. *Id.* BOP policy does not require an inmate's presence during the DHO's certification of a CDC hearing. Painter Decl. ¶ 10.

On November 15, 2022, a BOP DHO reviewed the CDC's efforts, found Petitioner to have violated Code 309, and imposed the sanctions of 14 days loss of GCT, 30 days of quarters restrictions, and 40 hours of extra duty. *Id.* at ¶ 11, Ex. 11 (Dkt. No. 14-1 at 56-59). As a result, Petitioner's projected release date was changed by 14 days. *Id.* Petitioner was released from BOP custody on February 10, 2023. *Id.* at ¶ 12.

Petitioner filed the instant petition on January 3, 2023. Dkt. No. 1. On February 9, 2023, Petitioner filed a letter stating that he was to be released from custody on February 10, 2023. Dkt. No. 8. The record shows that he was released on that date. Dkt. No. 14-1 at 109.

///

///

3

## DISCUSSION

### I. <u>Motion to Dismiss</u>

Petitioner claims that the DHO held a hearing *in abstentia*, in violation of due process. Dkt. No. 1 at 2. At the time of the hearing, Petitioner was at Santa Rita Jail, and although the BOP knew where he was, they chose to hold a hearing without him. *Id.* at 3. He also asserts that the DHO "lied when recording the hearing results in sentry (stating that the hearing was not held in *abstentia* when in fact it was." *Id.* Petitioner asserts that he is innocent of the charges, and that there is no documentation stating that he cannot take classes at Goodwill, including Information Technology classes. *Id.* Petitioner also asserts that he is unable to exhaust his administrative remedies because they are unavailable to him. *Id.* at 2.

Respondent filed an answer, asserting that the petition should be dismissed as moot because Petitioner has been released from BOP custody, or alternatively, because Petitioner failed to exhaust his available administrative remedies before filing this petition. Dkt. No. 14 at 1. Respondent also contends that the claim lacks merit because there was sufficient evidence that Petitioner violated BOP rules. *Id.*

Because the Court finds this case is moot as discussed below, it is not necessary to address the other grounds for dismissal.

### II. <u>Mootness</u>

Article III, Section 2, of the Constitution requires the existence of a "case" or "controversy" through all stages of federal judicial proceedings. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). A case becomes moot "when the parties lack a legally cognizable interest in the outcome." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1020 (9th Cir. 2010) (quotation marks omitted).

4

An incarcerated convict's (or a parolee's) challenge to the validity of his conviction satisfies the case-or-controversy requirement, because the incarceration (or the restrictions imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by the invalidation of the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained and not considered moot. *Id.* Continuing collateral consequences may be either proven or presumed. *Id.* at 8.

The presumption of collateral consequences that is applied to criminal convictions does not extend to prison disciplinary proceedings. *Wilson v. Terhune*, 319 F.3d 477, 481 (9th Cir. 2003). A prisoner seeking to challenge prison disciplinary proceedings in habeas must demonstrate that continuing collateral consequences exist if the punishment imposed as a result of the disciplinary action has expired. *See id.*

After reviewing the papers, the Court finds there is no longer a live case-or-controversy because Petitioner has been released from BOP custody and is not serving a term of supervised release. The record shows that Petitioner was released on February 10, 2023. Dkt. No. 14-1 at 109. The record also shows that once Petitioner's 36-month supervised release term was completed, no further term was to follow. *See supra* at 2. Because Petitioner is not on supervised release, there does not appear to be any collateral consequences to maintain this suit. Moreover, although Petitioner has been served with Respondent's answer, he has filed no opposition to attempt to demonstrate that continuing collateral consequences exist. Dkt. No. 16 at 2. Accordingly, the Court finds this action is moot because Petitioner lacks a cognizable interest in the outcome. *See Johnson*, 623 F.3d at 1020.

///

///

///

**CONCLUSION**

For the foregoing reasons, Respondent's motion to dismiss is **GRANTED**. Dkt. No. 14. The petition for writ of habeas corpus is **DISMISSED** as moot.

No certificate of appealability is warranted in this case because a reasonable jurist would not find the dismissal of this petition debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: __June 26, 2024_____

*[signature]*
BETH LABSON FREEMAN
United States District Judge

Order Granting MTD as Moot; Denying COA
PRO-SE\BLF\HC.24\00016Smith_grant-MTD(moot)